IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| NASRA OSMAN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Case No. 1:21-cv-639 (RDA-WEF) |
| | ) |
| YOUNGS HEALTHCARE, INC., *et al.*, | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM OPINION AND ORDER**

This matter comes before the Court on Defendants Young Healthcare, Inc. and Young Shin Lee's ("Defendants") Motion for Partial Summary Judgment ("Motion"). Dkt. 54. The Court has dispensed with oral argument as it would not aid in the decisional process. Fed. R. Civ. P. 78(b); Local Civil Rule 7(J). This matter has been fully briefed and is now ripe for disposition. Considering Plaintiff Nasra Osman's ("Plaintiff") Amended Complaint (Dkt. 4), the Motion, Defendants' Memorandum in Support of the Motion (Dkt. 55), Plaintiff's Opposition to the Motion ("Opposition") (Dkt. 57), and Plaintiff's Affidavit in Opposition to the Motion (Dkt. 58), it is hereby ORDERED that the Motion is GRANTED in part and DENIED in part for the reasons that follow.

I. BACKGROUND

A. Undisputed Facts

Although the parties dispute certain facts[1], the following facts are either undisputed or, applying the proper dispositional standard at this stage, considered in the light most favorable to

---

[1] Plaintiff indicated that she does not dispute Defendants' alleged undisputed facts only for the purposes of efficiency. Dkt. 57 at 1.

Plaintiff. Plaintiff, a former employee of Defendants, has filed suit in this Court alleging that Defendants intentionally and willfully violated the overtime provisions of the Fair Labor Standards Act 29 U.S.C. § 201, *et seq.*, (the "FLSA"), and discriminated against Plaintiff with regard to her compensation based on her race and ethnicity under 42 U.S.C. § 1981.

Plaintiff is a Black woman, Dkt. Nos. 4 ¶ 53; 55-2 ¶ 18, who worked for Defendants from on or about sometime in 2016 until on or about December 23, 2019 as a personal care aide ("PCA"). Dkt. 4 ¶ 12. As a PCA, Plaintiff cared for one patient, Emily Dunker, who she had previously provided care for through another healthcare agency. Dkt. 55 ¶ 7. As part of her work duties, Plaintiff provided the patient with companionship, care, and assisted her with daily activities such as providing transportation and feeding the patient. Dkt. 4 ¶ 12. When Plaintiff began working for Defendants, she had a regular pay rate of $11.25 per hour. Dkt. Nos. 4 ¶¶ 13-14; 55-1 at 8. Defendants later increased Plaintiff's rate to $11.50 per hour in 2018 and $11.75 per hour in 2019. Dkt. 55 ¶¶ 4-5. At Plaintiff's previous healthcare company, Plaintiff made $11.50 per hour. Dkt. 55 ¶ 6.

Plaintiff contends that she worked 96 hours per week for Defendants from May 30, 2016 to December 22, 2019. Dkt. 55 ¶ 9. Plaintiff also alleges that she worked 24-hour days for Defendants but was only paid for 12 hours of work, while a similarly situated Korean PCA, Kimberly Im, worked the same 24-hour shifts for the same patient and was paid for 16 hours. Dkt. 55 ¶¶ 1-2. Plaintiff also asserts that Im was paid a regular rate of $12 per hour. Dkt. 55 ¶ 3. In 2019, Plaintiff stopped working for Defendants and began looking for a job elsewhere because Defendants were not giving her enough additional hours to work. Dkt. 55 ¶¶ 10-11.

Defendants entered into a Statute of Limitations Tolling Agreement ("Tolling Agreement") with the Department of Labor ("DOL") on April 29, 2020, after the DOL had completed an

investigation of Defendants' employment standards pursuant to the FLSA.  Dkt. Nos. 55 ¶ 14; 55-6 at 1.  Plaintiff filed the Complaint in this action on May 24, 2021 against Defendants for denial of overtime wages beginning in 2016.  Dkt. 1.  Plaintiff asserts that her action is timely because the Tolling Agreement between the DOL and Defendants applies to her case.  Dkt. Nos. 55 ¶ 16; 57 at 4-6.  Plaintiff also asserts that Kimberley Im received over $20,000 in unpaid wages as a result of the Department of Labor's investigation.  Dkt. 57 ¶ 1.

Plaintiff is seeking unpaid overtime wages totaling, at a minimum, $92,476.80 in back pay in addition to compensatory damages under the FLSA.  Dkt. 4 at 8.  Plaintiff is also seeking punitive damages, reasonable attorney's fees, and compensatory damages as to Plaintiff's § 1981 claims.  *Id.* ¶ 58.

### B.  Procedural Background

Plaintiff filed her initial Complaint (Dkt. 1) on May 24, 2021 and subsequently filed an Amended Complaint (Dkt. 4) on May 26, 2021.  Defendants filed a motion to Dismiss for Lack of Jurisdiction (Dkt. 10) on June 14, 2021 and Plaintiff filed a Motion to Strike (Dkt. 18) on June 25, 2021.  On November 18, 2021 the Court ordered the Motion to Dismiss (Dkt. 10) and Motion to Strike (Dkt. 18) be withdrawn (Dkt. 21).  On October 28, 2022, Defendants filed a Partial Motion for Summary Judgment (Dkt. 54).  Plaintiff responded to Defendants' Partial Summary Judgment Motion on November 11, 2021 (Dkt. 57) and filed an Affidavit in Opposition for Partial Summary Judgment that same day (Dkt. 58).

## II.  STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56, "[s]ummary judgment is appropriate only if the record shows 'that there is no genuine dispute as to any material fact and the movant is

entitled to judgment as a matter of law.'" *Hantz v. Prospect Mortg., LLC*, 11 F. Supp. 3d 612, 615 (E.D. Va. 2014) (quoting Fed. R. Civ. P. 56(a)).

"A material fact is one 'that might affect the outcome of the suit under the governing law.' A disputed fact presents a genuine issue 'if the evidence is such that a reasonable jury could return a verdict for the non-moving party.'" *Id.* at 615-16 (quoting *Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 183 (4th Cir. 2001)). The moving party bears the "initial burden to show the absence of a material fact." *Sutherland v. SOS Intern., Ltd.*, 541 F. Supp. 2d 787, 789 (E.D. Va. 2008) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). "Once a motion for summary judgment is properly made and supported, the opposing party has the burden of showing that a genuine dispute exists." *Id.* (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)).

On summary judgment, a court reviews the evidence in the light most favorable to the non-moving party. *McMahan v. Adept Process Servs., Inc.*, 786 F. Supp. 2d 1128, 1134-35 (E.D. Va. 2011) (citing *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003)). Here, Plaintiff is the non-moving party and all reasonable inferences are accordingly drawn in her favor. *Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 570 (4th Cir. 2015) (quoting *Tolan v. Cotton*, 572 U.S. 650, 657 (2014)). This is a "fundamental principle" that guides a Court as it determines whether a genuine dispute of material fact within the meaning of Rule 56 exists. *Id.* "[A]t the summary judgment stage[,] the [Court's] function is not [it]self to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

A factual dispute alone is not enough to preclude summary judgment. "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of

material fact." *Anderson*, 477 U.S. at 247-48.  And a "material fact" is one that might affect the outcome of a party's case.  *Id.* at 248; *JKC Holding Co. v. Wash. Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001).  The substantive law determines whether a fact is considered "material," and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  *Anderson*, 477 U.S. at 248; *Hooven-Lewis v. Caldera*, 249 F.3d 259, 265 (4th Cir. 2001).  A "genuine" issue concerning a "material fact" arises when the evidence is sufficient to allow a reasonable jury to return a verdict in the non-moving party's favor.  *Anderson*, 477 U.S. at 248.

III.  ANALYSIS

A. 42 U.S.C. § 1981 Claim

Defendants move for partial summary judgment as to Count II of the Amended Complaint; Plaintiff's discrimination claim under § 1981, with regard to two issues.  Defendants first argue that Plaintiff cannot make out a prima facie case of racial discrimination under 42 U.S.C. § 1981 because she did not suffer an adverse employment action.  In support of their position, Defendants argue that Plaintiff was not fired and instead Plaintiff claimed that she continued to work 96 hours for Defendants until she left the position of her own accord.  In a similar vein, Defendants assert that Plaintiff failed to identify a contractual relationship that was impaired, as such is required to bring claims under § 1981, because her claims relate only to wages.[2]  Second, Defendants contend that since Plaintiff does not claim that she was treated worse than any similarly situated white employees, only that she was treated worse than a Korean employee, summary judgment must be

---

[2] The Court easily dispenses with Defendants' contractual relationship argument.  The Civil Rights Act of 1991 expanded the scope of § 1981 to cover racial discrimination in the terms and conditions of employment as well, which includes compensation.  *See* Pub.L. 102-166, § 101, 105 Stat. 1071 (1991) (codified as 42 U.S.C. § 1981(b)).

5

granted because § 1981 applies only to adverse treatment in comparison to white employees. In response, Plaintiff argues that racially discriminatory payment of wages like what is alleged to have occurred in this case is precisely the kind of situation that is prohibited under § 1981. Plaintiff also argues that § 1981 does not require the involvement of similarly situated white employees for a claim of discrimination to be actionable.

There is a genuine dispute of material fact as to whether Plaintiff can satisfy her § 1981 claim. To survive summary judgment on her § 1981 claim,[3] Plaintiff may prove her case in one of two ways. *Garrow v. Economos Props. Inc.*, 242 Fed.Appx. 68, 70 (4th Cir. 2007) (citing *Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 318 (4th Cir. 2005)). First, Plaintiff may offer "direct evidence of discrimination under ordinary standards of proof, or second under the system of shifting evidentiary burdens established by the Supreme Court in *McDonnel Douglas v. Green* 411 U.S. 792 (1973)." *Id.* at 70. Because Plaintiff has not offered direct evidence of discrimination, we will analyze her claim under the *McDonnell-Douglas* framework.

Under the *McDonnell-Douglas* framework, a plaintiff must first establish a prima facie case of racial discrimination. *Riley v. Honeywell Tech. Sols., Inc.*, No. CV BEL-05-2426, 2008 WL 11444189, at *5 (D. Md. Apr. 16, 2008), *aff'd*, 323 F. App'x 276 (4th Cir. 2009)). Once a plaintiff has established her prima facie case, the burden then shifts to the defendant to present evidence that they acted for a legitimate, nondiscriminatory reason. *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506-507 (1993); *Guessous v. Fairview Prop. Invs., LLC*, 828 F.3d 208, 216 (4th Cir. 2016). If a defendant makes this showing, a plaintiff must demonstrate that the

---

[3] It is well-established that the elements required to establish a prima facie case of discrimination are the same under Title VII and § 1981. *See, e.g.*, *Thompson v. Potomac Electric Power Co.*, 312 F.3d 645, 649 (4th Cir. 2002).

defendant's articulated reason was pretextual and the true reason was to discriminate. *See St. Mary's Honor Ctr.*, 509 U.S. at 507; *Guessous*, 828 F.3d at 216.

In order to establish a prima facie case of racial discrimination in wages, Plaintiff must first establish "(1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action with respect to compensation; and (4) that similarly-situated employees outside the protected class received more favorable treatment." *White v. BFI Waste Servs., LLC*, 375 F.3d 288, 295 (4th Cir. 2004) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *Love–Lane v. Martin*, 355 F.3d 766, 786-87 (4th Cir. 2004); *Causey v. Balog*, 162 F.3d 795, 804 (4th Cir.1998)).

It is undisputed that (1) Plaintiff, a Black woman, is a member of a protected class. The parties do not appear to dispute that Plaintiff can establish her (2) satisfactory job performance as neither party raised the issue in any of their briefing. Defendants dispute that Plaintiff can establish that she suffered an adverse employment action. Dkt. 55 at 8. However, Defendants do not dispute that Plaintiff claims she was (3) paid a lower hourly rate and paid for fewer hours than a similarly situated Korean employee. Dkt. 55 ¶¶ 2-3. Discrimination in compensation, such as what is described, qualifies as an adverse employment action because it adversely "affect[s] 'the terms, conditions, or benefits' of the plaintiff's employment." *James v. Booz-Allen & Hamilton, Inc.*, 368 F.3d 371, 375 (4th Cir. 2004); *see also White*, 375 F.3d at 295. Thus, Plaintiff satisfies the first three elements of her prima facie case.

Remarkably, Defendants assert that Plaintiff still cannot establish a prima facie case because she does not allege that she was treated any less than a similarly situated white employee. At best, this is very strained reading of the statutory framework preventing workplace

7

discrimination when it comes to the payment of wages and is not supported by any relevant caselaw.

Plaintiff appropriately responds that § 1981 still applies even if the similarly situated employee is nonwhite. While § 1981 provides that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State . . . to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens," 42 U.S.C. § 1981, the phrase "as enjoyed by white citizens" only acts to emphasize "the racial character of the rights being protected." *McDonald v. Santa Fe Trail Transp. Co.*, 427 U.S. 273, 287 (1976) (citing *Georgia v. Rachel,* 384 U.S. 780, 791 (1966)) (holding § 1981 prohibits racial discrimination in favor of whites as well as nonwhites). Further, § 1981 does not require the involvement of a white individual for a claim of discrimination to be actionable, but rather only requires that an individual outside of the plaintiff's protected class be treated more favorably. *See White, LLC*, 375 F.3d 288, 295 (4th Cir. 2004) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)); *see also Kim v. Dial Serv. Int'l, Inc.,* 159 F.3d 1347 (2d Cir. 1998) (affirming district court ruling in favor of Korean plaintiff alleging § 1981 racial discrimination claim in comparison to a similarly situated Japanese employee).

Plaintiff asserts that Kimberly Im, a Korean woman, who served in the same role as a PCA for the same patient, for the same number of hours, was paid a higher hourly rate than Plaintiff and was paid for more hours than Plaintiff. Dkt. 55 ¶¶ 2-3. As a Korean woman, Im is outside of Plaintiff's protected class as Plaintiff is a Black woman. Plaintiff alleges that Im was paid higher wages due to her race, and Defendants do not argue that Im was not a similarly situated employee. Thus, Plaintiff meets the fourth element and has satisfied her prima facie case.

Because Plaintiff has established her prima facie case, the burden shifts to Defendants to offer a "legitimate, non-discriminatory reason" for the disparity in compensation. *Guessous*, 828 F.3d at 217. Defendants do not suggest anything to support the proposition that the difference between Plaintiff's pay and Im's pay was due to a legitimate non-discriminatory reason. In fact, Defendants did not put forth any reason at all for the alleged pay disparity. Thus, based on the evidence presented, a reasonable jury could find that Plaintiff was discriminated against due to her race in violation of § 1981, and Defendants are therefore not entitled to summary judgment on this claim.

### B. Back Pay as Part of Compensatory Damages Under § 1981

Defendants next move for summary judgment on the issue that Plaintiff cannot claim back pay as part of her compensatory damages under 42 U.S.C. § 1981. They argue that § 1981 explicitly excludes back pay from compensatory damages. In response, Plaintiff does not appear to dispute that the statute excludes back pay as part of a compensatory damages award, but rather argues that she is entitled to back pay in addition to compensatory damages because the scope of her relief is not limited by § 1981's provision on compensatory damages. Dkt. Nos. 57 at 3; 4 at 8. In this regard, federal courts have "no authority to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it." *Church of Scientology of Cal. v. United States,* 506 U.S. 9, 12 (1992) (quoting *Mills v. Green*, 159 U.S. 651 (1895)). Given that Plaintiff does not argue that she is entitled to back pay as part of her compensatory damages award under § 1981, it does not affect the matter at issue in the instant case. For that reason, the question is not properly before the Court to adjudicate on summary judgment. Thus, the motion for partial summary judgment on this issue is denied as moot.

### C. Punitive Damages under the FLSA

Defendants next argue that Plaintiff's request for punitive damages under the FLSA must fail as a matter of law because punitive damages are not available in a FLSA action. In response, Plaintiff claims that she is not seeking punitive damages under the FLSA, but only under 42 U.S.C § 1981 and 42 U.S.C. § 1981a. Here, Plaintiff's Amended Complaint only requests punitive damages as it relates to violations of 42 U.S.C §1981 and 42 U.S.C. §1981a, not the FLSA, Dkt. 4 ¶ 58, and Plaintiff restated in her response that she was not seeking punitive damages under the FLSA, Dkt. 57 at 3. As explained above, this Court does not have the authority to rule on legal principles that do not affect the matter at issue in the case before it. *See Church of Scientology of Cal.*, 506 U.S. at 12. Since Plaintiff is not requesting punitive damages under the FLSA, there is no issue before the court to adjudicate for summary judgment. Accordingly, the Defendants' motion for partial summary judgment as to punitive damages under the FLSA is denied as moot.

### D. Tolling Agreement with the Department of Labor

Defendants next argue that some of Plaintiff's claims under the FLSA are time barred because Defendants' Tolling Agreement does not cover actions by the Plaintiff. In general, violations of the FLSA are subject to a two-year statute of limitations. 29 U.S.C. § 255(a). For willful violations of the FLSA, the limitations period extends to three years. *Id.*; *see also Desmond v. PNGI Charles Town Gaming, L.L.C.*, 630 F.3d 351, 357 (4th Cir.2011) ("The FLSA provides two potential limitations periods. For non-willful FLSA violations, a two-year statute of limitations applies. When the violation is willful, a three-year statute of limitations applies." (citations omitted)). Defendants do not dispute that the willful three-year statute of limitations period applies. Thus, since Plaintiff filed her Complaint on May 24, 2021, more than three years after the start of her employment in and around 2016, the action would be limited to damages

accruing from May 24, 2018, unless Plaintiff's claims are tolled by the Tolling Agreement.[4] *Figueroa v. District of Columbia Metro. Police Dep't*, 633 F.3d 1129, 1133–34 (D.C. Cir. 2011) (concluding that FLSA claims accrue each time there is a failure to pay earned overtime pay).

Defendants contend that the statute of limitations for Plaintiff's FLSA claims is not tolled by the Tolling Agreement between Defendants and the Department of Labor. In so doing, Defendants aver that Plaintiff was not a party to the agreement and the parties did not express a clear intention that Plaintiff, or any other employee for that matter, was an intended beneficiary of the Tolling Agreement. In support of their argument, Defendants cite to provisions of the Tolling Agreement that provide that the Agreement is "[i]n exchange for the Secretary's agreement to withhold immediate filing of legal proceedings . . ." and "[t]he undersigned employers agree that this Agreement (or any copy thereof) may be introduced into evidence as proof of the waiver and tolling agreed herein, in all legal proceedings by the Secretary that may be brought either pursuant to Sections 216(b), 216 (c), and/or 217 of the Act." Dkt. Nos. 55-6 ¶¶ 5-6; 55 at 11. According to Defendants, this provision specifies that the Tolling Agreement is only enforceable as to actions pursued by the Secretary. Defendants also argue that, at the time of drafting the statements, they made sure that the employees were not a party nor the intended beneficiaries of the agreement. Dkt. 55 at 11.

Plaintiff argues that the Tolling Agreement applies not only to the Department of Labor, but to all of Defendants' employees because the plain language of the Tolling Agreement is "not Plaintiff specific." Dkt. 57 at 4. As support, Plaintiff turns to the following language:

---

[4] The statute of limitations under the FLSA may also be equitably tolled under unique circumstances. *See Kim v. Lee*, No. 1:18-CV-1350, 2019 WL 8892575, at *2 (E.D. Va. Apr. 15, 2019). However, we need not address this issue here because in her memorandum opposing summary judgment, Plaintiff makes no attempt to avail herself of equitable tolling.

11

> The Secretary and the undersigned employers agree that the time period beginning on 12/14/2017, until and including 12/12/2019, ("the tolling period") will not be included in computing the time limited by any statute of limitations, nor will this tolling period be raised in any other defense raised by the undersigned employers (including laches) that otherwise would be available to the undersigned employers concerning the timeliness of any legal proceedings that may be brought against either of the undersigned employers, under either sections 216(b), 216(c) and/or 217 of the Act, as a result of the Secretary's findings from this investigation as long as the legal proceeding is filed within 728 days from Dec. 12, 2019. The Secretary and the undersigned employers specifically agree that any applicable statute of limitations shall be tolled for the entire tolling period set forth herein.

Dkt. Nos. 57 at 4; 55-6 ¶ 4. According to Plaintiff, the phrase "any legal proceedings" indicates that the Tolling Agreement is not limited to claims brought by the Secretary. Dkt. 57 at 4. Further, Plaintiff argues that the incorporation of § 216(b), which provides a private right of action for employees to sue to recover unpaid overtime wages, suggests that the parties intended for Plaintiff's claims to be covered. *Id.* at 4-5. Plaintiff further argues that the language of the Tolling Agreement tolls the statute of limitation for Defendants' employees so long as two conditions are met. *Id.* First, the action must be brought as a result of the Secretary's findings from the investigation referenced in the Tolling Agreement. Second, the legal proceeding must be filed within 728 days from December 12, 2019. *Id.* Plaintiff contends that she meets the first condition because there was a DOL investigation that led to Kimberly Im receiving $20,000 in overtime pay, and in response Plaintiff filed her own suit because Plaintiff was unhappy that she did not also receive overtime pay. *Id.* at 5. Thus, according to Plaintiff, this action is a result of findings of the Secretary. *Id.* Plaintiff also asserts that she meets the second condition because she filed suit on May 24, 2021, which is within 728 days from December 12, 2019. *Id.*

As the Tolling Agreement is a contract, Virginia law governs this question of contract interpretation. *James v. Cir. City Stores, Inc.*, 370 F.3d 417, 422 (4th Cir. 2004) (citing *Volt Info. Sci., Inc. v. Bd. of Trustees of Leland Stanford Univ.*, 489 U.S. 468, 474 (1989)). The Supreme

12

Court of Virginia has noted that "[t]he guiding light" of contract interpretation under Virginia law is the intention of the parties as expressed by them in the words they have used, and courts are bound to say that the parties intended what the written instrument plainly declares." *Golding v. Floyd*, 539 S.E.2d 735, 737 (Va. 2001) (quoting *Magann Corp. v. Electrical Works*, 123 S.E.2d 377, 381 (1962)). "To prove they are an intended beneficiary, a third party must show that the contracting parties, "clearly and definitely intended [the contract] to confer a benefit upon him." *Bank of Am. v. Musselman*, 240 F. Supp. 2d 547, 554 (E.D. Va. 2003). "To determine whether the original parties intended to benefit a third party, Virginia courts look to the plain language of the contract." *Coonley v. Wells Fargo Bank, Nat'l Ass'n*, No. 3:18-CV-00192-JAG, 2018 WL 6787941, at *2 (E.D. Va. Dec. 26, 2018), *aff'd*, 776 F. App'x 797 (4th Cir. 2019) (citing *Envtl. Staffing Acquisition Corp.*, 725 S.E.2d 550, 554 (Va. 2012)).  A third party who incidentally benefits from a contract does not qualify as an intended beneficiary under Virginia law. *Id.* at *2 (citing *Valley Landscape Co. v. Rolland*, 327 S.E.2d 120, 124 (Va. 1977)).  Thus, the question presented here is whether the summary judgment record discloses a triable issue of fact as to Plaintiff's status as an intended beneficiary of the Tolling Agreement between the Department of Labor and Defendants.

This court concludes, based on well settled principles of Virginia law, that there is no material dispute as to Plaintiff's status as an intended beneficiary under the Tolling Agreement. Plaintiff cites no case that supports her expansive interpretation of the Tolling Agreement. It is undisputed that on April 29, 2020, Defendants entered into a Tolling Agreement with the DOL. It is also undisputed that Plaintiff was not a named party to the Tolling Agreement. Dkt. Nos. 55 ¶ 14; 55-6. The text of the Tolling Agreement states that the purpose of the Tolling Agreement was to allow for the **Department of Labor** to engage in further discussion to reach a settlement and to

13

attempt to resolve Defendants' outstanding disputes, if any, with the Department of Labor. Dkt. 55-6 at 1.

The Court finds Plaintiff's arguments unpersuasive for several reasons. First, 29 U.S.C. § 216(b), unlike other federal regulations, does not prohibit an employee from filing a private cause of action during the time the Secretary of Labor is investigating the matter. The statute only bars an employee from bringing a private cause of action upon the filing of a complaint by the Secretary. 29 U.S.C. §261(c). Thus, the incorporation of § 216(b) without more cannot clearly show intent on behalf of the parties to confer a benefit on the Plaintiff. Additionally, other language in the Tolling Agreement also references § 216(b) but clarifies that the parties agree the Tolling Agreement can be introduced as evidence of tolling specifically in proceedings *by the Secretary*, making no reference to Plaintiff or other similarly situated employees. Dkt. 55-6 ¶ 6. Further, while not entirely clear, the most natural reading of "as a result of the Secretary's findings from this investigation" is that it applies to claims made by the Secretary after an investigation by the Department of Labor, not claims by employees that are unhappy with the Department of Labor's findings. While Plaintiff may have incidentally benefitted from the Tolling Agreement had the DOL decided to pursue a claim on Plaintiff's behalf, there is "no language which shows clear and definite intent to benefit" Plaintiff or other similarly situated employees. *See Obenshain v. Halliday*, 504 F. Supp. 946, 956 (E.D. Va. 1980) (holding party who incidentally benefited from a contract between the county government and the United States of America did not have rights under the contract). Therefore, even when considering the facts in the light most favorable to the Plaintiff, there is no dispute of any material fact as to whether the Tolling Agreement covers the Plaintiff and summary judgment should be granted. Damages will be limited to claims beginning

three years before the filing of the Complaint, in line with the statute of limitations for willful violations of the FLSA.

## IV. CONCLUSION

For the reasons set forth above, it is hereby ORDERED that Plaintiffs' Motion for Partial Summary Judgment (Dkt. 54) is GRANTED IN PART and DENIED IN PART. Because Plaintiff's § 1981 claim presents genuine issues of material fact, the Motion is denied as to Count II of the Amended Complaint. As Plaintiff did not request back pay as compensatory damages under § 1981 or punitive damages under the FLSA, the Motion is denied as moot as to those claims. The Motion is granted as to whether Plaintiff's claims are covered by the Tolling Agreement and Plaintiff's claims shall not be tolled by the Tolling Agreement between Defendants and the Department of Labor.

It is SO ORDERED.

Alexandria, Virginia
February 15, 2023

/s/
Rossie D. Alston, Jr.
United States District Judge